EA 26 CV 00699

FEB 19 2026

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

OGECHI V. MEZU

                Plaintiff,               :

       v.                           : Civil No.

                                  :

POLARIS PHARMACY SERVICES OF MARYLAND, LLC,

                                  :

Served on                               :

                                  :

COGENCY GLOBAL, INC.
1519 YORK ROAD
LUTHERVILLE MD 21093

                                  :

NATHANIEL ROBERTS

                                  :

served on                               :

                                  :

COGENCY GLOBAL, INC.
1519 YORK ROAD
LUTHERVILLE MD 21093

                                  :

MOSES B. WILLIAMS aka BERNARD

                                  :

served on                               :

                                  :

COGENCY GLOBAL, INC.
1519 YORK ROAD
LUTHERVILLE MD 21093

                                  :

                   Defendants.       :

                                  :

## PLAINTIFF'S COMPLAINT / PETITION FOR WRONGFUL TERMINATION AND

## RETALIATION

## (JURY TRIAL DEMANDED)

Plaintiff, by and through her attorney, hereby files this Complaint against the above-named defendants, asserting claims under Title VII of the Civil Rights Act of 1964, for complaint for wrongful termination, retaliation and discrimination as well as claims under 42 U.S.C. §§ 1981 and 1983, and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Ogechi V. Mezu, PharmD. resides in Baltimore County, Maryland, and was previously employed as a pharmacist by the defendant Polaris Pharmacy Services of Maryland, LLC, and is a Nigerian born naturalized United States citizen.

2. This Court has jurisdiction over this action pursuant to Md. Code Ann., Cts. & Jud. Proc. § 4-401, et seq., as the amount in controversy exceeds the jurisdictional limit of the District Court of Maryland.

3. Venue is proper in Baltimore County, Maryland, as the Defendants conduct business in this County, and the events giving rise to this Complaint occurred in this County.

4. Defendant Polaris Pharmacy Services of Maryland, LLC, is operating as a Long Term Care Pharmacy, and is a limited liability company organized and existing under the laws of Maryland, with its principal place of business in the state of Maryland, located at 7200 Rutherford Road, Windsor Mill, MD 21244 in Baltimore County, Maryland which exists to provide long term care pharmacy services.

5. Defendant, Nathaniel Roberts, is an adult individual serving as the Pharmacy Manager and Director of Pharmacy for Polaris Pharmacy Services of Maryland, LLC. His address is currently unknown to the Plaintiff.

6. Defendant, Moses B. Williams (aka Bernard), is an adult individual in a supervisory or managerial role at Polaris Pharmacy Services of Maryland, LLC. His address is currently unknown to the Plaintiff

## ALLEGATIONS AND STATEMENT OF FACTS COMMON TO ALL COUNTS

7. Plaintiff was hired by Defendant Polaris Pharmacy Services of Maryland, LLC (hereinafter "Defendant Polaris") as a licensed Pharmacist on or about July 28, 2025.

8. Plaintiff was initially offered a job on or about Friday, March 28. 2025 via a phone call initiated

by the defendant, Nathaniel Roberts to the plaintiff

9.   On or about Tuesday, April 1, 2025 9:48 PM, plaintiff sent an email memorializing the offer to the defendant.

10. The defendant, Nathaniel Roberts on or about April 2, 2025 10:28 AM responded via email stating, "Yes, I will have HR contact you regarding the next steps to start the onboarding process. The process is new to me, and I am learning day by day."

11. HR never contacted the plaintiff. Plaintiff sent multiple emails on or about April 7, 2025, April 14, 2025 and June 4, 2025 asking if the offer was forthcoming and the defendant, Nathaniel Roberts responded on or about June 5, 2025 that, "I am still interested in hiring you; however, we cannot move forward with the offer because of internal processes that are ongoing."

12. On or about June 11, 2025, defendant reached out to the plaintiff via email and requested that the plaintiff call him which the defendant responded to on or about June 11, 2025.

13. On or about June 15, 2025, defendant initiated an email to the plaintiff stating that he had "good news" and requested that the plaintiff call him.

14. On or about June 15, 2025, defendant, Nathaniel Roberts, emailed the plaintiff an official offer letter of employment congratulating the plaintiff.

15. On or about July 19, 2025, the plaintiff accepted, signed and emailed an executed copy of the employment offer.

16. Plaintiff's employment was terminated on August 6, 2025, a mere nine (9) calendar days after commencing employment.

17. During her brief tenure, Plaintiff observed and reported numerous grave violations of state and federal law, professional ethical standards, and company policy pertaining to pharmacy operations and controlled substances. These reports were made directly to her superiors, Defendants Nathaniel Roberts and Moses B. Williams.

3

18. Specifically, on or about August 4, 2025, Plaintiff sent an email to Defendant Nate Roberts detailing critical compliance concerns.

19. In said email, Plaintiff highlighted significant discrepancies in Controlled Substance Schedule II (CII) inventory, specifically noting unaccounted Oxycodone 5mg tablets and improper logging practices. Plaintiff explicitly stated: "There is a huge discrepancy in the CII inventory and all unaccounted medication must be reported to the DEA via their electronic 106 log within 24 hours or as soon as the discrepancy has been identified."

20. Plaintiff further reported that "The daily CII logs are not being done accurately as pharmacists have just subtracted from the last filled quantity rather than writing down the actual quantity remaining in the bottle." Plaintiff warned that such practices "goes against the DEA requirements and makes it harder to identify diversion if one is occurring and prevents adequate and timely reporting of these incidents to corporate." Polaris Pharmacy Services of Maryland, LLC sent a technician who from traveled from Florida to Maryland and showed up at the pharmacy to reconcile the control medications. A job intended for the pharmacist or pharmacy manager.

21. Plaintiff alleges that the technician that was sent from Florida to do the inventory count informed and showed her a stack of returned medications that she stated still needed to be processed and returned to the inventory. She further stated that she was tired of reconciling the control medications because this wasn't the first time she had been sent to Maryand to do this.

22. Plaintiff alleges that the defendant Nathaniel Roberts stated to the plaintiff that he had conducted an opening inventory count of the control medications earlier when he assumed his position as pharmacist-in-charge but refused to initially sign and accept it because the discrepancy was so much.

23. Plaintiff alleges that the defendant Nathaniel Roberts informed her after her complained about

4

the lack of accountability with the handling of the control medications that he had just accepted and signed off on the control inventory opening count that he had made earlier.

24. In the same email, Plaintiff reported an unlawful "company-wide practice" of diverting Long-Term Care (LTC) medications, intended for residents or facility use, for personal employee use.

25. Plaintiff specifically documented a request from a colleague, Cheree Caesar, to process an "OTC medication for her personal use," which Caesar claimed was a "common occurrence and allowed by the company."

26. Plaintiff explicitly refused to comply with this unlawful request, stating in her email to Defendant Roberts: "I do not feel comfortable verifying this."

27. Plaintiff's refusal to verify Cheree Caesar's medication was a direct challenge to what Plaintiff understood to be an illegal practice involving improper use of LTC medications.

28. Plaintiff sent them a copy of the alleged prescription which shows the use of a fictitious physician name (Dr. House, Maryland), a fake National Provider Identifier (NPI) (5555555555202?) the last number was cut off hence the question mark at the end of the NPI number, and a fabricated DEA number (MD5555555) into the pharmacy system for the purpose of processing prescriptions through the pharmacy software, Framework ECM, for the diversion of LTC medications for personal use.

29. Plaintiff also addressed negligence in maintaining pharmacist daily logs and temperature logs, both allegedly required by the Maryland Board of Pharmacy.

30. Plaintiff concluded her August 4, 2025, email by stating her commitment to ethical conduct: "I will continue to work ethically and continue to follow company policies and procedure and ensure that I assist in maintaining compliance when I am aware of non-compliance."

31. On August 6, 2025, just two days after submitting her detailed report of compliance violations, Plaintiff was abruptly terminated by Defendants.

32. The termination letter, emailed by Sarah Burton, HRIS, Compensation & Benefits Manager at Polaris Pharmacy Services of Maryland, LLC to the plaintiff on July 11, 2025. Defendant Polaris, falsely alleged "insubordination and failure to adjust to workplace training" as the reasons for termination.

33. Prior to her termination, Plaintiff was subjected to inadequate training, including being left unsupervised for hours as the sole pharmacist during periods designated for "training" This directly contradicts the termination letter's claim of "failure to adjust to workplace training."

34. Plaintiff was finally terminated by defendants Nathaniel Roberts, Moses B. Williams and another employee Dakota A. Silvers. Defendant Williams explicitly stated, "Well, it's not about the training…. You've told us everything we're doing is illegal," and further, "I have been to many companies and you can't be at a company for a week and tell them everything they're doing is wrong…" These statements confirm that Plaintiff's termination was directly in response to her reports of illegal activities.

35. Plaintiff was also subjected to a hostile work environment due to repeated and unwelcome sexual harassment from a technician, who made inappropriate comments about Plaintiff's physical appearance and repeatedly sniffed Plaintiff daily, stating, "you smell so good" and "uhhh, I love the way you smell." This behavior was reported and witnessed by Defendants Roberts and Williams and other pharmacy personnel, yet no remedial action was taken.

36. Plaintiff subsequently filed an EEOC complaint, which has since been discharged, and she has received a 90-day Notice of Right to Sue letter. This letter is incorporated by reference herein and attached hereto as Exhibit.

37. Plaintiff emailed a detailed rebuttal letter to Defendant Polaris on or about August 15, 2025, which corroborates the facts stated herein. Plaintiff did not receive a response to the rebuttal letter she sent.

6

## COUNT I - WRONGFUL TERMINATION – VIOLATION OF PUBLIC POLICY (MARYLAND)

38. The allegations set forth in paragraphs 1-37 are hereby incorporated as if set forth again at length.

39. Maryland recognizes a cause of action for wrongful termination when the termination contravenes a clear mandate of public policy. Adler v. American Standard Corp., 291 Md. 31, 432 A.2d 464 (1981)

40. Maryland public policy strongly encourages pharmacists to report violations of state and federal law related to pharmacy practice, especially those involving controlled substances and patient safety. This policy is embodied in various statutes and regulations, including, but not limited to:

41. Md. Code Ann., Health Occ. § 12-101 et seq, (Pharmacy Act): Mandates standards for the practice of pharmacy,

42. COMAR 10.34.10.05: Mandates reporting including ethical conduct, maintenance of records, preventing drug diversion and any conduct that violates the practice of pharmacy.

43. Health Occ. § 12-403: Mandates that pharmacies operate in compliance with the law along with the rules and regulations of the board.

44. COMAR 10.34.10.01 mandates that pharmacists must abide by all federal and state laws relating to the pharmacy practice including the dispensing, storage, labeling and distribution of devices and drugs.

45. 21 CFR 1301.76. pertaining to controlled substances which is a federal law enforced by the DEA, which establishes strict controls over controlled substances to prevent diversion, abuse, and illicit trafficking. State pharmacists are instrumental in upholding these federal regulations at the local level. It mandates that, The registrant shall notify the Field Division Office of the

7

Administration in his area, in writing, of the theft or significant loss of any controlled substances within one business day of discovery of such loss or theft. The registrant must also file a complete and accurate DEA Form 106 with the Administration through DEA's Diversion Control Division secure network application within 45 days after discovery of the theft or loss.

46. The public policy implicated here specifically protects pharmacists who report (1) violations related to the inventory and control of Schedule II controlled substances (e.g., Oxycodone), (2) the unlawful diversion of medications (e.g., LTC medications for personal use), and (3) the falsification of professional and prescription information in pharmacy systems.

47. Plaintiff's reports regarding discrepancies in CII inventory, the practice of diverting LTC medications for personal use, falsification of physician and prescription data, and negligence in maintaining required logs were critical actions taken to uphold these clear mandates of public policy.

48. Defendants terminated Plaintiff's employment in direct retaliation for her good-faith reporting of these unlawful activities, which constituted her fulfilling professional and ethical obligations.

49. The termination of Plaintiff's employment under these circumstances violates the clear mandates of Maryland public policy, as recognized by Maryland common law.

50. As a direct and proximate result of Defendant Polaris's wrongful termination, Plaintiff has suffered and continues to suffer significant damages, including but not limited to, lost wages, lost benefits, emotional distress, damage to reputation, and other pecuniary and non-pecuniary losses

51. WHEREFORE, plaintiff demands judgment in her favor and against defendants as set forth in the prayer for relief.

## COUNT II: RETALIATION AND WHISTLEBLOWER PROTECTION

52. The allegations set forth in paragraphs 1-37 are hereby incorporated as if set forth again at

length.

53.  Plaintiff is a whistleblower under various federal statutes, specifically, but not limited to, the Sarbanes-Oxley Act (SOX) (18 U.S.C. § 1514A) and the False Claims Act (FCA) (31 U.S.C. § 3730(h)). While Defendants may argue SOX only applies to publicly traded companies, the principles of whistleblower protection extend broadly, and the Act's spirit informs the public policy of protecting employees who report corporate fraud.

54. Plaintiff's reports regarding the diversion of medications, the falsification of physician and prescription information, and the improper handling of controlled substances, including allegations of "unaccounted tablets" and "huge discrepancy in the CII inventory," constitute reports of fraudulent activity and actions that could possibly lead to false or fraudulent claims being submitted to government healthcare programs (e.g., Medicare/Medicaid if LTC facilities receive government funding or the medications were paid for by government programs under fraudulent pretenses).

55. The alleged "company-wide practice" of diverting LTC medications for personal employee use and allegedly deducting the cost of medications from their employees paycheck, especially when coupled with the alleged falsification of physician and prescription information and the use of a "made up physician" and "fake NPI" and "DEA number," creates a strong inference of an intent to defraud or a practice may allegedly result in illegal charges to healthcare programs, potentially implicating the False Claims Act.

56. Under the False Claims Act, 31 U.S.C. § 3730(h), an employee is protected from retaliation for lawful acts done in furtherance of an action under the FCA, including reporting fraudulent activity to a supervisor.

57. Plaintiff engaged in protected activity by reporting potential fraud and illegal practices concerning controlled substances and medication diversion to her superiors. These reports were

9

made in good faith and with a reasonable belief that Defendants were violating federal and state laws.

58. Defendants had knowledge of Plaintiff's protected activity, as her reports were made directly to Defendants Nathaniel Roberts and Moses B. Williams.

59. Defendants terminated Plaintiff's employment in retaliation for her protected whistleblower activities.

60. There is a clear causal connection between Plaintiff's protected activity and her termination, given the short temporal proximity of two days between her comprehensive email reporting the violations and her termination.

61. As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has suffered and continues to suffer significant damages, including but not limited to, lost wages, lost benefits, emotional distress, damage to reputation, and other pecuniary and non-pecuniary losses.

WHEREFORE, plaintiff demands judgment in his favor and against defendants as set forth in the prayer for relief.

## COUNT III:  RETALIATION, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (HOSTILE WORK ENVIRONMENT & SEXUAL HARASSMENT

62.  The allegations set forth in paragraphs 1-37 are hereby incorporated as if set forth again at length.

63. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., prohibits employers from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's sex. This includes protection against sexual harassment and retaliation for opposing discriminatory practices.

64. During her employment, Plaintiff was subjected to unwelcome and repeated comments and actions of a sexual nature from a technician, including comments like "you smell so good" and

10

"uhhh, I love the way you smell," accompanied by sniffing Plaintiff.

65. This conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create a hostile work environment.

66. Plaintiff reported this harassment, both explicitly and implicitly through the presence and observations of Defendants Roberts and Williams, who were aware of the technician's behavior.

67. Defendants, particularly Roberts and Williams, failed to take prompt and appropriate remedial action in response to the reported sexual harassment, thereby condoning and allowing the hostile work environment to persist.

68. Furthermore, Plaintiff's opposition to and reporting of the hostile work environment and sexual harassment constitutes protected activity under Title VII.

69. Defendants retaliated against Plaintiff for her protected activity, among other reasons, by terminating her employment. The failure to address the harassment, combined with the subsequent termination, evinces a retaliatory motive.

70. As a direct and proximate result of Defendants' creation and/or tolerance of a hostile work environment and their retaliation against Plaintiff, Plaintiff has suffered and continues to suffer significant damages, including but not limited to, emotional distress, humiliation, and other pecuniary and non-pecuniary losses.

71. WHEREFORE, plaintiff demands judgment in her favor and against defendants as set forth in the prayer for relief.

## COUNT IV: PUNITIVE DAMAGES

72. The allegations set forth in paragraphs 1-37 are hereby incorporated as if set forth again at length.

73. Defendants' actions, including the wrongful termination of Plaintiff for reporting serious legal and ethical violations, their retaliation against a whistleblower, their failure to address a hostile

11

work environment and sexual harassment were undertaken with malice, willful disregard, or reckless indifference to Plaintiff's federally and state protected rights.

74. Therefore, Plaintiff seeks punitive damages against Defendants to punish them for their outrageous conduct and to deter similar conduct in the future.

WHEREFORE, plaintiff demands judgment in her favor and against defendants as set forth in the prayer for relief.

## PRAYER FOR RELIEF

Plaintiff Ogechi V. Mezu respectfully prays that this Honorable Court enter judgment on her behalf and against defendants, and requests that this Honorable Court

1) enter such declaratory and injunctive relief as may be necessary

2) A declaration that Defendants wrongfully terminated Plaintiff in violation of Maryland public policy;

3) A declaration that Defendants retaliated against Plaintiff for her protected whistleblower activities in violation of federal law;

4) A declaration that Defendants subjected Plaintiff to a hostile work environment and retaliated against her in violation of Title VII of the Civil Rights Act of 1964

5) Award compensatory and punitive damages severally, in an amount sufficient to punish Defendants and deter similar conduct in the future, to be determined at trial;

6) Award costs of this action to plaintiff, including attorney's fees and expenses as allowed by Title VII and 42 U.S.C. § 1988;

7) Pre-judgment and post-judgment interest at the highest rate allowed by law;

8) Reasonable attorney's fees and costs of this action; and

9) Any other and further relief as this Court deems just and proper.

12

## JURY DEMAND

Plaintiff Ogechi V. Mezu respectfully demands a jury on all legal claims and issues.


Respectfully submitted,

/s/ Chidi Onukwugha
Chidi Onukwugha, Esq
Valarie Ibe, Esq.
ONUKWUGHA & ASSOCIATES. LLC
144440 Cherry Lane Court, Suite 112
Laurel, Maryland 20707
CPF #: 0406150233


## VERIFICATION

I, Ogechi V. Mezu, PharmD, hereby certify under penalty of perjury that I am the Plaintiff in the above-entitled action; that I have read the foregoing Complaint and know the contents thereof; that the same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

**Dated: February 18, 2026**

/s/Ogechi V. Mezu, PharmD

Plaintiff


## CERTIFICATE OF SERVICE


I hereby certify that on this **February 19, 2026,** a copy of the foregoing COMPLAINT AND DEMAND FOR JURY TRIAL will be filed electronically with the Clerk of the Court and sent to:

POLARIS PHARMACY SERVICES OF MARYLAND, LLC: Registered Agent Name COGENCY

13

GLOBAL, INC. 1519 YORK ROAD LUTHERVILLE MD 21093 and NATHANIEL ROBERTS at COGENCY GLOBAL, INC. 1519 YORK ROAD LUTHERVILLE MD 21093 and MOSES B. WILLIAMS aka BERNARD at COGENCY GLOBAL, INC. 1519 YORK ROAD LUTHERVILLE MD 21093.

Documents will also be served upon the Defendants via certified mail, return receipt requested, and by first-class mail at their last known addresses.